TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY *v.* HAYES.

[No. 24,041. Filed December 12, 1924. Rehearing denied February 24, 1925.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Sufficiency of Complaint.—Negligence in Failing to Insulate Wires.*—In an action for injuries received by coming into proximity with uninsulated electric wires, an allegation that plaintiff was directed to work in a room containing wires carrying a high voltage of electricity which were not "insulated" charged negligence of the employer, the statute (§3862d Burns 1914, Acts 1911 p. 597, §4) imposing the duty on persons using electricity of a dangerous voltage to provide full and complete "insulation", which means to place in a detached situation or to prevent the transfer of electricity by interposing non-conductors. p. 642.

Terre Haute, etc., Traction Co. *v.* Hayes—195 Ind. 638.

2. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Violation of Statutory Duty.—Statute.*—The risk of injury by reason of the employer's failure to perform a statutory duty is not assumed by a servant, from which, it follows that an employer who has failed to comply with the provision of §3862d Burns 1914, Acts 1911 p. 597, §4, requiring persons using electricity of high voltage to insulate all wires carrying the same, is precluded from making the defense that the servant assumed the risk of injury from uninsulated wires. p. 643.

3. MASTER AND SERVANT.—*Injuries to Servant.—Common-Law Action.—Defenses that May not be Made.*—Under the express provisions of the Workmen's Compensation Act (Acts 1915 p. 392, §10, §8020t Burns' Supp. 1921), an employer who has elected not to operate under that act cannot defend a common-law action on the ground that the employee had assumed the risk of such injury, was guilty of contributory negligence, or was injured by the negligence of a fellow servant. p. 643.

4. MASTER AND SERVANT.—*Employers' Liability Law.—Persons Within Its Provisions.—Averment.*—In an action under the Employers' Liability Act, an averment in the complaint that the defendant "had in its employ more than five persons" sufficiently showed that the case was within the provisions of the act and governed by it. p. 644.

5. MASTER AND SERVANT.—*Injuries to Servant.—Uninsulated Wires.—Verdict for Employee Sustained by Evidence.*—In an action by an employee for injuries resulting from uninsulated electric wires, evidence *held* to sustain verdict for employee, regardless of the evidence to the contrary. p. 644.

6. MASTER AND SERVANT.—*Injuries to Servant.—Instructions.*—In an action by an employee for injuries received in the employer's electric plant, the failure of the court to instruct the jury that, to make the employer's negligence actionable, it must have violated a legal duty to use care, could not have misled the jury where the court gave instructions which expressly made the plaintiff's right of recovery to depend upon proof that the injury was caused by obedience to an order negligently given by a superior. p. 645.

7. MASTER AND SERVANT.—*Injuries to Servant.—Instructions.—Refusal to Give Defendant's Instructions.*—In an action by an employee for injuries received in the employer's electrical department, where the court instructed the jury that the burden was upon the plaintiff to prove all the averments of his complaint before he would be entitled to recover, and then gave specific instructions telling the jury what the plaintiff must prove, the court's refusal to give defendant's requested instruction that there was no burden on it to prove itself not

guilty of the negligence charged, or that no presumption of negligence arose from the mere happening of the accident, was not reversible error.  p. 645.

From Johnson Circuit Court; *Fremont Miller,* Judge.

Action by John Hayes, by next friend, against the Terre Haute, Indianapolis and Eastern Traction Company.  From judgment for plaintiff, the defendant appeals.  *Affirmed.*

*McNutt, Wallace, Harris & Randel,* for appellant.

*W. J. Beckett, Rawley & Baumunk* and *Featherngill & Drybread,* for appellee.

ÉWBANK, J.—Appellee, as plaintiff, sued appellant, as defendant, to recover for personal injuries sustained by reason of burns caused by contact with or close proximity to wires in defendant's substation power plant that carried a high voltage of electricity.  Overruling defendant's demurrer to the second amended complaint and overruling its motion for a new trial are assigned as error.

The complaint alleged, in substance, that on July 16, 1918, defendant was a corporation engaged in operating an electric interurban railroad from Indianapolis, through Brazil to Terre Haute, and had in its employ more than five persons; that, more than thirty days before said date, defendant had elected to reject the provisions of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), and had given notice of such rejection, and was not operating under said act; that, at the city of Brazil, defendant maintained a power plant, from which electric power was supplied to its interurban railroad, and had therein a "high tension room," in which were "high tension wires" charged with a high and dangerous voltage of electricity, to wit, 23,000 volts; "that said high tension wires were not insulated, and being so charged with said high volt-

age, said electricity would discharge itself from said wires and would jump therefrom to a person passing the same at a distance of two inches or more, and thereby rendered said high tension wires dangerous for a person to go near to said wires"; that defendant and its agent, J. W. Cohorn, knew of such dangerous condition; that as defendant's agent, acting within the scope of his authority as such, said J. W. Cohorn, employed plaintiff "to work in said power plant, and to look after the same and attend to the telephone therein and guard and protect persons in said power house and in said high tension room from injury while there, and also to remove persons therefrom who were not rightfully in said room"; that plaintiff "was ordered, directed and instructed by said J. W. Cohorn   *   *   *   to prohibit all persons, except employees of the defendant working in said high tension room and who were rightfully therein, from going into and remaining in said high tension room,   *   *   *   which orders, direction and instruction, he (plaintiff) was bound to conform to and obey"; that Cohorn ordered plaintiff, in case any person other than employees of defendant authorized to work therein should go into or be in the high tension room, to go in and guard and protect such person from injury by the discharge of electricity from said high tension wires while therein, and to remove such person from that room; that on July 16, 1918, a boy seventeen years old, who was not employed by defendant to go into or work in said high tension room, went into it without permission of the defendant or of plaintiff, and, pursuant to the said order given him by defendant's servant Cohorn, plaintiff went into the high tension room to see that the boy was protected from injury by contact with said wires, and to remove the boy from the room as soon as he could do so; that while so en-

gaged, pursuant to said order, and for the purpose of keeping said boy from being injured by electricity from the high tension wires, he passed within twenty-four inches from said wires, when he slipped and fell, and his hand was thereby extended near to or in contact with said wires, and the electricity leaped or was discharged therefrom into his body, and injured him in a manner described; that he was injured by the further negligence of said Cohorn in that Cohorn knew the electricity would leap several inches from the wires and cause an injury and, with such knowledge, gave said order, and that while plaintiff was in the act of obeying said order of Cohorn, the electrcity did jump or was discharged from said high tension wires and injured him, as aforesaid.

The statute provides that "It is hereby made the duty of all owners * * * agents or persons whatever, engaged in the care, operation, management 1. * * * of any building * * * shop, factory or business of whatsoever kind, or in the erection, repair or operation or management of any machinery, mechanism or contrivance, or in the transmission, generation or use of any electricity or other power * * * to see and to require that all metal, wood * * * tools, all contrivances, and everything whatsoever used therein, are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, * * * and that in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or any employees of the owner, contractor or subcontractor, transmitting or using said electricity, are liable to come into contact with the wire or wires. * * *" §3862d Burns 1914, §4, Acts 1911 p. 597.

The word "insulate" is defined by Webster's Inter-

national Dictionary as, "To place in a detached situation, or in a state having no communication with surrounding objects; To prevent the transfer of electricity or heat to or from bodies by the interposition of nonconductors"; and by the New Standard Dictionary as, "To place in a detached state or situation so as to have no dependence on or association with surrounding persons or objects; To separate from other conducting bodies, as by a covering or support of a nonconducting substance, usually in order to prevent or lessen the leakage of electric current from the object (as a wire) insulated, or to prevent the passage of heat." And the allegation that in a room open for access by persons not employed to work therein, and into which plaintiff was required to go in the discharge of duties under his employment, wires carrying a high and dangerous current of 23,000 volts of electricity were "not insulated" charged negligence of the employer, as did also the allegation that with knowledge that such uninsulated wires carrying that voltage were in the room, defendant, by Cohorn, ordered and directed plaintiff to go in there for the purpose named.

Appellant insists that danger of injury by electricity from the high tension wires was a risk of the employment which plaintiff assumed by undertaking the work he was doing. But the risk of injury by reason of the employer's failure to perform a duty expressly imposed by statute is not assumed by a servant. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 618, 62 N. E. 492, 92 Am. St. 319; *Suelzer* v. *Carpenter* (1915), 183 Ind. 23, 29, 107 N. E. 467. And an employer who, by his own election, is not operating under the Workmen's Compensation Act (Acts 1915 p. 392, *supra*) is precluded from defending on the ground that the injured employee had assumed the risk of the injury, or was guilty of contributory negligence, or was

injured by the negligence of a fellow servant. §8020t Burns' Supp. 1921, §10, Acts 1915 p. 392.

Appellant suggests a belief that the allegation in the complaint that defendant "had in his employ more than five persons" did not sufficiently show that the case is governed by the Employer's Liability Act (§§8020a-8020k Burns 1914, Acts 1911 p. 145), which provides that "any person, firm, or corporation while engaged in business * * * and employing in such business * * * five or more persons shall be liable" as therein provided, and that one in its employ shall not "be held to have assumed the risk of the employment where the injury complained of resulted from his obedience to any order or direction * * * of any employee to whose orders or directions he was under obligation to conform or obey." But no argument is offered in support of such belief, and the authorities cited do not so hold, and we think the averment sufficient in that respect. It was not error to overrule the demurrer to the complaint.

Plaintiff (appellee) testified that he was employed and set to work by J. W. Cohorn, who had (he said) charge and control of the power plant in question, and that Cohorn instructed him and set him to work and gave him certain directions, among which was the order to go into the high tension room and remove intruders, as charged in the complaint. And he testified that when he saw that the boy had gone into the high tension room and was climbing a ladder to where the wires carrying a high voltage were located, and then lost sight of him, he feared that he was injured or would be, and ran into the room, up the ladder and along a platform past the wires, in an attempt to find the boy and remove him from proximity to the wires and from the room, and that his foot slipped on the smooth floor of the platform as he was

passing the wires, and the injury resulted, as alleged. And it was shown by uncontradicted evidence that the "sleeve" of tile, a foot in diameter, that surrounded the hole in the platform through which the high tension wire ran with which plaintiff came in contact, extended only a short distance from the floor of the platform, above which point, the wire was bare and exposed, being separated from the runway of the platform only by a railing about seventeen inches from the wire, made of an iron pipe an inch and a half in diameter. This evidence, tending to support the verdict, must be accepted as true on appeal whatever testimony there may be to the contrary, and sufficiently proves that defendant was guilty of the negligence charged in the complaint.

The trial court gave instructions by which it told the jury that before the plaintiff could recover it must be proved by a preponderance of the evidence that

6, 7. it was dangerous for a person exercising ordinary care to go upon the balcony of the transformer in the high tension room, and that plaintiff, when he went there, was acting in obedience to the orders or directions of Cohorn, and also must be proved that he was at the time bound to conform to and obey such orders, and that his injury was the result of conforming to or obeying said orders; that if he knew and appreciated the danger of coming in contact with the high tension wires in the high tension room, it was his duty to exercise ordinary care to keep from contact with them, and if he failed to use such ordinary care and such failure was the sole cause of his injury, he could not recover unless it was necessary to come in contact with or in close proximity to said wires in obeying the orders and directions of defendant, as alleged in the complaint. These instructions were even less favorable to plaintiff than would have been warranted under the law as applied to the evidence. And

since they expressly made plaintiff's right of recovery to depend upon proof that defendant's servant Cohorn negligently gave an order to which plaintiff was bound to and did conform, and proof that such obedience caused his injury, we do not think the jury could have been misled to appellant's prejudice by the failure of the court, in giving a general definition of negligence, to mention the fact that, to make such negligence actionable, it must have violated a legal duty of defendant to use care. And having given an instruction, as the court did, stating that the burden was upon the plaintiff to prove all the material averments of his complaint by a fair preponderance of the evidence before he would be entitled to recover, as well as specific instructions telling the jury what plaintiff must prove, we do not think that the court committed reversible error by refusing to give further instructions stating that there was no burden upon defendant to prove itself not guilty of the specific negligence charged, or stating that no presumption that defendant was negligent arose from the mere fact that the accident happened.

Appellant also asked a number of other instructions which the court refused to give. But, except so far as they were covered by instructions given, they were not in conformity with the law on the subjects of defendant's duty to insulate its wires and the defenses of assumption of risk and contributory negligence, as declared in the foregoing opinion. Therefore, it was not error to refuse to give them.

The judgment is affirmed.