ATHEL DUVALL, DANIEL E. BARNHART *v.*
CARSTEN-MCDOUGALL-WINGETT, INC.

[No. 3-273A20. Filed June 28, 1973.]

*Daniel A. Roby* and *Harold W. Myers,* of Fort Wayne, for appellants.

*Robert E. Kabisch,* of Fort Wayne, for appellee.

HOFFMAN, C.J.—This appeal is from a negative judgment in a trial by the court on the complaint of plaintiffs-appellants Daniel Barnhart and Athel Duvall to recover for the alleged negligent repair of plaintiff-Barnhart's furnace by defendant-appellee Carsten-McDougall-Wingett, Inc. The sole issue pre-

sented is whether the judgment of the trial court is contrary to law.

The evidence contained in the record before us most favorable to the finding of the trial court is as follows:

Daniel E. Barnhart, Athel Duvall and his wife Peggy Duvall were occupants of a house owned by Barnhart and located at 2011 Pauline Street, Fort Wayne, Indiana. On September 28, 1970, Barnhart called defendant Carsten-McDougall-Wingett, Inc. to repair the furnance of the house because it "got to where it wouldn't kick on and off right." In response to the service call, Lester Newsome an employee of defendant, came to the home to repair the furnace.

Upon arriving at the home, Newsome, accompanied by Barnhart and Duvall, went to the basement. Newsome began to check the furnace. He removed the ground wire from the stack control switch and "found that the ground wire was hot. I [Newsome] got a shock out of it, and it touched somethin' and then we blew a fuse."

The house had two fuse boxes—one on the back porch, one in the attic apartment where Barnhart lived. Duvall, Newsome and Barnhart started upstairs. Duvall said, "I have fuses," and Newsome asked, "What type fuses are you using?" Duvall replied, "Fifteen amp," and Duvall went out to the back. As Newsome and Barnhart started upstairs the lights came back on. Newsome presumed that Duvall replaced a fuse on the back porch, however, Duvall denies replacing any fuses. Newsome then went to his truck to get a new switch and a volt-meter.

Newsome, Duvall and Barnhart returned to the basement where Newsome began to check the wires with his volt-meter. He unhooked the main wire feeding the furnace, and another fuse blew. Newsome told Barnhart, "This furnace is not wired correctly. It is not safe. It will not pass City Code." Barnhart replied, "I have to have heat tonight, regardless. It's operated fifteen years thisaway, and I must have heat to-

night." Newsome said, "I don't want to bother with it, but if you insist, and you don't want to get an electrician, but as far as I'm concerned you should get an electrician tonight, not tomorrow." Barnhart stated, "Well, it's ran thisaway, and I don't think there's that much wrong with it." Newsome said, "Let me check a little farther."

At the time of the above quoted conversation Newsome was working with the wires "where they come into the furnace." Thereafter another fuse blew. Duvall stated that there were no more fuses. Newsome said, "I will get one from my truck. I have plenty of fuses." Newsome then went out to his truck and returned with a "twenty amp fusetron, spring-loaded." Newsome said, "You could use a twenty on a furnace, because you have a humidifier on here, and with a humidifier and the furnace motor—this is an oil furnace with a motor on it that runs the oil pump—and with a humidifier you have to have— you should have a twenty amp fuse." Newsome gave the fuse to Duvall, however, there is neither evidence as to who installed the twenty amp fusetron, nor evidence as to whether it was installed at all.

Newsome returned to the basement and another fuse blew. Newsome said, "This is far as I'm goin'. I'm goin' to call my boss and see what he advises me to do from here." Newsome then went to his truck where he saw smoke coming from the back of the house.

Arlo Arnett, an electrician called as an expert witness by the plaintiffs, testified that placing the twenty amp fusetron where a fifteen amp fuse had theretofore blown twice, or maybe three times "could have been" a proximate cause of the ignition of a fire.

On appeal, the only argument raised by appellants is that the finding and decision of the trial court is contrary to law because the evidence is without conflict and leads to but one conclusion, the same being a finding for plaintiffs-appellants. The questions to which appellants' contention must be applied

were formed for trial in the pretrial order filed August 22, 1972, as follows:

"a. Whether Lester L. Newsome acted negligently.
"b. If he did, was his negligence the proximate cause of the damage to plaintiffs' Barnhart and Duvall?
"c. Whether plaintiffs Barnhart and/or Duvall were contributorily negligent.
"d. Whether plaintiffs Barnhart and/or Duvall incurred the risk of the damage suffered."

Appellants correctly assert that any action in negligence must rest upon a duty, a breach thereof and an injury proximately resulting from such breach. *Chicago, Indianapolis & Louisville R. Co.* v. *Carter* (1971), 149 Ind. App. 649, 274 N.E.2d 537, 540.

Here, Carsten-McDougall-Wingett, Inc. does not deny that it was under a duty to service the furnace of Barnhart in the same manner as would a reasonably prudent furnace repairman under the same or similar circumstances. However, the record before us contains no evidence that the twenty amp fusetron was installed into the electrical circuits of the house. Thus, the question of whether Newsome was negligent in repeatedly installing or permitting the installation of fifteen amp fuses would be one upon which reasonable men might differ.

Even, however, were we to infer from the evidence that the twenty amp fusetron was installed in the fuse box, we would be constrained to affirm the judgment of the trial court. As was stated in *New York Central R. Co.* v. *Cavinder, etc.* (1965), 141 Ind. App. 42, at 51, 211 N.E.2d 502, at 508, (transfer denied):

"In general, questions of proximate cause are for the court only in plain and undisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury." (Citing authorities.)

In the instant case, reasonable men might conclude from the evidence contained in the record before us that the proxi-

mate cause of the fire was not the twenty amp fuse, but the repeated blowing out and replacing of fifteen amp fuses, thus overheating the wiring system.

Moreover, the question of contributory negligence is ordinarily one for the trier of fact. *Chicago, Indianapolis & Louisville R. Co. v. Carter, supra; Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N.E.2d 684.

Here, the evidence is conflicting as to whether Duvall, Newsome or Barnhart replaced the blown fuses. It was the duty of the trier of fact, not this court, to weigh the conflicting evidence and determine the credibility of the witnesses.

Similarly, there is evidence from which it coud reasonably be inferred that Duvall and Barnhart, knowing that a fifteen amp fuse was required for use in the wiring of the house, incurred or assumed the risk of fire by installing the twenty amp fusetron or permitting it to be installed.

Having carefully considered the evidence contained in the record before us, we cannot say that the judgment appealed from is contrary to law.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 297 N.E.2d 861.